UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MICHAEL GIOVO,

     Applicant,

v.                                 CASE NO. 8:15-cv-2855-T-23TGW

SECRETARY, Department of Corrections,

     Respondent.

_____/

## O R D E R

Michael Giovo applies for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) and challenges the validity of his state conviction for first-degree felony murder, for which conviction Giovo serves life imprisonment. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 9) The respondent admits the application's timeliness. (Doc. 9, p. 6)

## FACTS[1]

Giovo lived with the victim (a healthy three-month old infant), Jessica Hooper (Giovo's girlfriend and the mother of the victim), and Hooper's young daughter. One evening Hooper became intoxicated and went to sleep. During that evening the victim became fussy. While Hooper and her daughter slept, Giovo cared for the

---

[1] This factual summary derives from Giovo's brief on direct appeal and the record. (Respondent's Exhibits 3 and 9)

victim.  Giovo placed the victim on the couch and went into the kitchen to prepare a

bottle.  While Giovo was in the kitchen, the victim fell off of the couch onto the floor

but sustained no significant injury.[2]  Giovo fed the victim and put him back in his

crib.  The next morning, Hooper awoke to find Giovo asleep with the victim lying on

Giovo's chest.  When Hooper picked up the victim, she noticed that he was clammy

and feverish, with scratches on his neck and bruises on his head.  Hooper noticed a

hole in the wall that had not been there the day before.  When the victim began to

twitch, Giovo and Hooper took the victim to the hospital where he died.  The

medical examiner concluded that the victim died from blunt force trauma to his head

and ruled the death a homicide.

Giovo was arrested and charged with first-degree felony murder.  A jury

convicted Giovo and the judge sentenced him to life imprisonment.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs Giovo's application.  *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210

(11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000).  Section 2254(d), which creates a

highly deferential standard for federal court review of a state court adjudication,

states in pertinent part:

---

[2] Officer Amanda Gay testified at trial that she went to Giovo's home after speaking with
Giovo at the hospital. (Respondent's Exhibit 3, Vol. III, pp. 494–95) Officer Gay observed a
detective measure the distance from the couch to the floor where the victim fell. (Respondent's
Exhibit 3, Vol. III, pp. 496–97) Officer Gay testified that the measurement was eighteen inches.
(Respondent's Exhibit 3, Vol. III, p. 498) During the trial the state called three medical doctors who
each testified that a fall from a height of eighteen inches could not have caused the brain injury that
killed the victim. (Respondent's Exhibit 3, Vol. III, pp. 421, 439, 462 and Vol. IV, p. 539)

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

>     (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

>     (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for

- 3 -

obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *See White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents

defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson,* 138 S. Ct. at 1192. "[T]he State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson,* 138 S. Ct. at 1192.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Giovo's conviction and sentence. (Respondent's Exhibit 11) In another *per curiam* decision without a written opinion the state

appellate court affirmed the denial of Giovo's Rule 3.850 motion for post-conviction relief. (Respondent's Exhibit 17) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster*, 563 U.S. at 181–82, explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Giovo bears the burden of overcoming by clear and convincing evidence a state court's fact determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state court's rejection of Giovo's post-conviction claims warrants deference in this action. (Respondent's Exhibit 11, Order Denying Rule 3.850 Motion for Post-Conviction Relief)

## INEFFECTIVE ASSISTANCE OF COUNSEL

Giovo claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant

> must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Giovo must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Giovo must show "a reasonable probability that, but for counsel's unprofessional errors, the result of

the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."  466 U.S. at 690–91.  Giovo cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would
> have done. Nor is the test even what most good lawyers would
> have done. We ask only whether some reasonable lawyer at the
> trial could have acted, in the circumstances, as defense counsel
> acted at trial . . . . We are not interested in grading lawyers'
> performances; we are interested in whether the adversarial
> process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).  The required extent of counsel's investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to
> investigate particular facts or a certain line of defense."
> *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to

> make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Giovo must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 106. *See also Pinholster*, 563 U.S. at 202 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and [the] AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and

*Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

In denying Giovo's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 15)  Because the state court correctly recognized that *Strickland* governs each claim of ineffective assistance of counsel, Giovo cannot meet the "contrary to" test in Section 2254(d)(1).  Giovo instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts.  In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable.  *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002).  The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

**Ground One**

Giovo contends that his trial counsel rendered ineffective assistance by not calling Dr. John D. Lloyd to testify as an expert witness at trial.  Giovo alleges that Dr. Lloyd would have supported his defense by testifying that the victim

"falling from [a height] of eighteen inches could have caused his fatal injury."

(Doc. 1, p. 4) Giovo asserts that Dr. Lloyd "informed counsel that he would have

shown the jury through a robotic demonstration that the victim's fall from a

couch — which the defense asserted happened — likely caused the fatal injury."[3]

Giovo claims that Dr. Lloyd advised trial counsel that "he would clear his schedule

to testify" on Giovo's behalf. According to Giovo, Dr. Lloyd "repeatedly emailed"

trial counsel inquiring when to be ready for trial. Without informing either Giovo or

Dr. Lloyd, trial counsel decided to not call Dr. Lloyd as a witness at trial. Giovo

asserts that the result of the trial would have been different if Dr. Lloyd had testified.

The state post-conviction court summarily denied Giovo's ground of

ineffective assistance of trial counsel as follows (Respondent's Exhibit 15, Order

Granting Defendant's Motion to Voluntarily Dismiss, Dismissing Defendant's

Memoranda, and Denying Defendant's Motion to Amend and Motion for

Post-conviction Relief, pp. 2–4):

> In ground one, Defendant claims that counsel was ineffective
> for failing to call Doctor John Lloyd to testify that the victim's
> death could have been caused by an eighteen-inch fall onto the
> carpet. The State's response argues that Dr. Lloyd would have

---

[3] The state deposed Dr. Lloyd before trial. Dr. Lloyd, who holds a Ph.D. in ergomonics, testified in his deposition about the effect of "forces associated with rotational kinematics" and opined that the victim's fall from the couch could have produced the brain injury that resulted in the victim's death. (Respondent's Exhibit 15, attach. C to the state post-conviction court's "Order Granting Defendant's Motion to Voluntarily Dismiss, Dismissing Defendant's Memoranda, and Denying Defendant's Motion to Amend and Motion for Post-conviction Relief) Dr. Lloyd subsequently testified at a pretrial hearing that he conducted an experiment using a mannequin to determine whether the victim's fall could have caused the fatal brain injury. Dr. Lloyd concluded that "a lateral rolling fall from a height of 18 inches onto a Berber carpeted flooring with underlay on a concrete foundation could cause significant risk for head and brain injury, possibly even leading to fatality in an infant." (Respondent's Exhibit 2, Vol. I, pp. 30–31)

been subject to impeachment on his expertise, the fact that he had not previously testified as an expert in Florida, on the fact that his experiment was designed specifically for this case, and by the testimony of Doctor Nagarajan Rangarajan.[4] The State also argues that Defendant was not prejudiced because Doctor Edward Willey also testified that the fall from the couch could have caused the victim's injuries.[5]

---

[4] Dr. Nagarajan Rangarajan, who holds a Ph.D. in biomedical engineering, testified for the state at the pretrial hearing that he reviewed Dr. Lloyd's report and disagreed with the methodology and results of Dr. Lloyd's experiment. (Respondent's Exhibit 2,Vol. II, pp. 80–100) After Dr. Rangarajan testified the defense called Dr. William Lee to testify. Dr. Lee testified that he was acquainted personally and professionally with Dr. Lloyd and "approve[d] of the methodology and the principles applied by Dr. Lloyd in this particular criminal case." (Respondent's Exhibit 2, Vol. II, p. 129)

[5] Dr. Edward Willey was the only defense witness at trial. Dr. Willey testified on direct examination as follows (Respondent's Exhibit 3, Vol. IV, pp. 582–84):

Q: Okay. How would you describe to the jury [the victim]'s condition that first day in the hospital?

A: Well, he had absolutely no external signs of any sort of trauma. In fact, even when it got to the autopsy and they had the opportunity to reflect the scalp, they found that there was no hemorrhage at the back of the head, which was thought to be present when he was in the hospital. So, effectively, there are no elements . . . to suggest trauma, either accidental or deliberate, which leads one to believe that maybe there's an alternative medical reason of actually occurring disease that's created this problem.

There are other possibilities [like] . . . bacterial infection of the bloodstream. Children that age are susceptible to bouts of apnea where they don't breathe and they may die unexpectedly. It's Sudden Infant Death Syndrome.

In addition, there is a possibility of vomiting and choking and not being able to breath as a result of that, which could send the same sort of cascade of the hypoxic damage to the brain and the damage to the dura and the bleeding, so it is not necessary to postulate that it was trauma.

I should also say something about the fall. Most falls like that are innocuous. They don't produce damage. In fact, probably none of us would be here . . .

Q: Well, Doctor, when you say it like that, you are referring to an eighteen-inch fall?

(continued...)

Defendant is not entitled to relief on ground one because counsel's decision not to call Dr. Lloyd was strategic and Defendant was not prejudiced. An evidentiary hearing is not required when it is obvious from the record that counsel's decision was strategic. *Jackson v. State*, 915 So. 2d 485, 486 (Fla. 2d DCA 2007). It is obvious from the record that counsel chose not to call Dr. Lloyd as a matter of strategy. First, the trial transcript clearly shows that counsel's argument at trial did not rely on the jury finding that the eighteen-inch fall caused the victim's injuries. From opening statements, counsel indicated that Defendant's statements that the victim rolled off the couch were not offered to show that the fall caused the brain damage. Counsel's opening statements, closing arguments, and questions asked during trial demonstrate that counsel attempted to show that the victim's mother could have caused the victim's injuries, that the victim's injuries may not have been intentional, and that the State had not proven how the victim was injured. In closing argument, counsel directly stated that the fall did not cause the victim's injuries. To the extent that counsel introduced evidence supporting the theory that the eighteen-inch fall caused the victim's death, it was a secondary, alternative argument that was not emphasized.

Second, counsel thoroughly investigated Dr. Lloyd's testimony: Counsel had Dr. Lloyd prepare a report, Dr. Lloyd was deposed by the State, and counsel heard Dr. Lloyd's testimony at a hearing on a motion to suppress Dr. Lloyd's testimony. *Cf. Mendoza v. State*, 81 So. 3d 579, 581 (Fla. 3d DCA 2012) (noting that if counsel conducts a reasonable investigation, strategic decisions based on that investigation are "virtually unchallengeable"). Accordingly, it is obvious from the record that counsel made a strategic decision not to argue

---

[5](...continued)

A: Yeah, the eighteen-inch fall on [sic] the couch onto the floor is probably not a reasonable explanation looking at it forward. But looking at it backwards, that may be the case. It may actually be true that the forces of that are sufficiently great to produce injury.

I have myself participated in experiments where shaking anatomical test devices and dropping them on the floor from distances like that were done and the forces of dropping them on the floor are many times greater than shaking.

So if shaking is capable of doing that, then dropping them 18 inches on the floor is certainly capable of doing it, too.

that the eighteen-inch fall killed the victim, and in accord with that decision, chose not to call Dr. Lloyd, whose testimony he was well aware of. This strategy was reasonable given that every expert that offered an opinion at trial testified that it was not possible or extremely unlikely that the fall caused the victim's injuries.

Additionally, Defendant was not prejudiced because Dr. Lloyd's testimony was cumulative, was subject to impeachment on numerous grounds, and was inconsistent with the testimony of several medical doctors. Dr. Willey gave testimony similar to Dr. Lloyd's: in some circumstances an eighteen-inch fall could cause injuries like the victim's, but it was not common. As noted by the State, Dr. Lloyd's expertise was subject to impeachment because he was a doctor of ergonomics, not a medical doctor, and Dr. Rangarajan, a doctor of biomechanical engineering, testified to several disagreements he had with Dr. Lloyd's report. Additionally, Dr. Lloyd's testimony that the victim's injuries could have been caused by the eighteen-inch fall if the victim rolled during the fall was contradicted by the victim's mother's testimony that the victim had not yet begun to roll on his own. Finally, as mentioned above, several medical doctors testified for the State that the victim's injuries were not caused by the eighteen-inch fall. As counsel's decision not to present Dr. Lloyd's testimony was strategic and Defendant was not prejudiced, ground one is denied.

"Complaints of uncalled witnesses are not favored because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir. 1978) (citations omitted). Giovo did not present in the state post-conviction court (and he does not present to this court) any evidence, aside from his own self-serving assertion, demonstrating that Dr. Lloyd was available at the time of trial and willing to testify on Giovo's behalf. *See e.g., Bray v. Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008) ("To prevail on [a claim of ineffective assistance of counsel for failing to call a witness], the [applicant] must name the

witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense."). Moreover, trial counsel's theory of defense was that the state could not prove beyond a reasonable doubt (1) that the victim's death resulted from a criminal act rather than an accident or (2) that Giovo was responsible for the victim's fatal injury. Even assuming that trial counsel performed deficiently by not calling Dr. Lloyd to testify at trial, because Giovo's defense was not that the fall from the couch caused the victim's death, Dr. Lloyd's testimony was not critical to the defense. Giovo fails to show that the outcome of the trial would have been different if Dr. Lloyd had testified. Because he cannot meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying this ground of ineffective assistance of counsel, Giovo is not entitled to federal habeas relief on ground one. 28 U.S.C. § 2254(d)(1), (d)(2).

**Ground Three**

Giovo contends that his trial counsel rendered ineffective assistance by admitting during closing argument that the victim's fall from the couch did not cause the victim's death. During closing argument trial counsel stated (Respondent's Exhibit 3, Vol. IV, p. 61):

> Now, the fall from the couch didn't cause any of the symptoms that you would expect to see that would lead to that brain damage, and I submit to you, ladies and gentlemen, that is because the brain damage had not been caused yet. The fall from the couch did not cause the damage.

Giovo alleges that his only theory of defense was that the fall from the couch caused the victim's death and that counsel's statement in closing argument "effectively stripped [him] of his only viable defense and rendered any defense evidence presented during trial futile." (Doc. 1, p. 8) Giovo further alleges that trial counsel hinted in his closing argument that the victim's mother caused the fatal injury, but no evidence at trial supported the theory. Giovo claims that he did not consent to trial counsel's statement in closing argument and that absent the challenged statement, the outcome of the trial would have been different.

The state post-conviction court summarily denied Giovo's ground of ineffective assistance of trial counsel as follows (Respondent's Exhibit 15, Order Granting Defendant's Motion to Voluntarily Dismiss, Dismissing Defendant's Memoranda, and Denying Defendant's Motion to Amend and Motion for Post-conviction Relief, p. 5) (court's record citations omitted):

> In ground three, Defendant alleges that counsel was ineffective for stating in closing argument that the fall from the couch did not cause the injuries that would lead to brain damage, and that the brain damage was instead caused by the victim's mother. Defendant alleges that if counsel had not performed deficiently, there is a reasonable probability that the outcome of the trial would have been different. The State's response argues that counsel pursued alternative theories of innocence: (1) that the fall from the couch did not cause the victim's injuries; and (2) that if the fall caused the victim's injuries, Defendant did not intentionally cause the fall. The State also argues that [the victim's mother]'s testimony supports counsel's argument that she caused the victim's injuries.
>
> Defendant is not entitled to relief on ground three because counsel's argument was a strategic decision and Defendant was not prejudiced. As the Court noted in ground one, the record is clear that counsel made a strategic decision to focus on the

argument that the State had not proven how the victim died or who (Defendant or the victim's mother) caused the victim's death.  As noted above, this strategy was reasonable because of the overwhelming evidence that the fall from the couch did not cause the victim's injuries. Admitting that the fall did not cause the victim's death is consistent with this strategy and was similarly reasonable. Defendant was not prejudiced because every doctor who offered an opinion — Dr. Willey, Dr. Thogmartin, Doctor Steven Nelson, Doctor Paul Danielson, and Doctor Sally Smith — testified that either the fall did not cause the victim's death or it was very unlikely that . . . it caused the victim's death. Further, as noted above, the victim's mother testified that the victim had not yet begun to roll, which would make it impossible for the victim to roll off the couch as described by Dr. Lloyd. Ground three is therefore denied.

The record shows that Giovo's defense was that the state could prove neither that the victim's death resulted from a criminal act nor that Giovo was responsible for the victim's fatal injury.  Counsel focused during the trial on (1) the victim's mother's intoxication, (2) the fact that the victim did not exhibit any signs of injury after falling from the couch, (3) the fact that Giovo did not have sole responsibility for the victim's care, and (4) the fact that the victim's mother cared for the victim the morning after the fall while Giovo was asleep before they took the victim to the hospital.  In his opening statement trial counsel told the jurors that "the prosecution is based on conjecture" and that after hearing the evidence, they "will conclude that the evidence does not prove beyond a reasonable doubt that anyone committed a crime and it fails to prove that it wasn't a tragic accident and it fails to prove beyond a reasonable doubt which parent is responsible for the event, be it an accident or abuse." (Respondent's Exhibit 3,Vol. III, pp. 350–51)  Counsel moved at the conclusion of the state's case for a judgment of acquittal based on the state's failure

to prove that Giovo had committed a criminal act.  (Respondent's Exhibit 3, Vol. IV, pp. 557–60)  Counsel asserted in his closing argument that the state had failed to prove (1) that a crime was committed and (2) that Giovo committed that crime. (Respondent's Exhibit 3, Vol. IV, pp. 659)

Contrary to Giovo's contention, the theory that the victim's fall caused his death was not the theory of defense.  Accordingly, counsel's statement in closing argument that the fall did not cause the victim's death did not deprive Giovo of his "only viable defense."  Giovo fails to meet his burden of proving that the state court either unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground of ineffective assistance of counsel.  28 U.S.C. § 2254(d)(1), (d)(2).

**Grounds Two and Four**

In ground two Giovo contends that his trial counsel rendered ineffective assistance by not showing to defense expert Dr. Edward Willey photographs of bruises on the victim's face.  Giovo alleges that Dr. Willey's:

> testimony regarding the likely cause of the victim's death, prior to seeing these photographs, was based on the lack of bruising or apparent injury to the victim.  Thus, [Dr.] Willey's testimony — as the sole defense expert — was impeached to the extent that the jury could have only formed two conclusions: (1) [Dr.] Willey was lying, or (2) the defense was insidiously concealing evidence from [Dr.] Willey.

(Doc. 1, p. 6)  During cross-examination by the prosecutor Dr. Willey admitted that he had not received the photographs from defense counsel.  Giovo asserts that, if trial

counsel had prepared Dr. Willey for trial, the outcome of the trial would have been different.

In ground four Giovo contends that his trial counsel rendered ineffective assistance by not calling his father, Michael Giovo, Sr., to testify at trial. Giovo claims that his father would have testified that:

> (1) he heard [the victim's mother] repeatedly uttering in an excited manner that Defendant 'did not do anything wrong' while [she and Giovo] were in the waiting room at the hospital just as [Giovo] was being arrested, and (2) he heard [the victim's mother] at the victim's funeral planning to party with her friends.

(Doc. 1, p. 9) Giovo asserts that such testimony, although hearsay, was admissible under either the excited utterance exception or the state of mind exception to Florida's rule against hearsay. Giovo claims that his father "was available for trial and routinely sought the audience of counsel to reiterate the point of testifying for the defense." (Doc. 1, p. 9)

The respondent opposes both ground two and ground four as unexhausted and procedurally barred because Giovo did not raise either ground in his post-conviction appeal. Giovo replies that he is entitled to a merits review under *Martinez v. Ryan*, 566 U.S. 1 (2012), because his post-conviction appellate counsel failed to raise the grounds in the appellate brief.

An applicant must present each claim to a state court before raising the claim in federal court. "[E]xhaustion of state remedies requires that [applicant]s 'fairly presen[t]' federal claims to the state courts in order to give the State the 'opportunity

to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995), *Picard v. Connor*, 404 U.S. 270, 275 (1971). *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."), and *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated.").

The state post-conviction court summarily denied both grounds of ineffective assistance of counsel. (Respondent's Exhibit 15, pp. 4–6) Giovo, through counsel, did not appeal the denial of either ground. As a result, Giovo deprived the state court of a "full and fair opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Boerckel*, 526 U.S. at 845. *See also Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) ("In Florida, exhaustion usually requires not only the filing of a Rule 3.850 motion, but an appeal from its denial.") (citations omitted). Consequently, both ground two and ground four are unexhausted. State procedural rules preclude Giovo from returning to state court to present the grounds in a second collateral appeal, rendering the grounds procedurally defaulted. Fla. R. Crim. P. 3.850(k).

"If the [applicant] has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief,

unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, an applicant "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, an applicant must demonstrate not only that an error at the trial created the possibility of prejudice but that the error worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimension. *United States v. Frady*, 456 U.S. 152 (1982). In other words, an applicant must show at least a reasonable probability of a different outcome. *Henderson*, 353 F.3d at 892.

In his reply Giovo argues entitlement to federal review under *Martinez* based on his post-conviction appellate counsel's failure to appeal the denial of these two grounds of ineffective assistance of trial counsel. (Doc. 10, pp. 2–3, 6) Giovo's reliance on *Martinez* is misplaced. *Martinez* recognizes a narrow exception to the exhaustion requirement announced in *Coleman v. Thompson*, 501 U.S. 722 (1991), for a claim of ineffective assistance of trial counsel. *Martinez* is limited to an attorney's error in initial review collateral proceedings:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, *including appeals from initial-review collateral proceedings*, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. *See* 501 U.S., at 754, 111 S. Ct. 2546; *Carrier*, 477 U.S., at 488, 106 S. Ct. 2639. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance

> at trial, even though that initial-review collateral proceeding
> may be deficient for other reasons.

566 U.S. at 16 (emphasis added). *See also Lambrix v. Sec'y, Fla. Dep't of Corr.*, 756 F.3d 1246, 1260 (11th Cir. 2014) ("Importantly, the *Martinez* rule is expressly limited to attorney errors in initial-review collateral proceedings."). The ineffective assistance of post-conviction appellate counsel provides no cause for Giovo's failure to exhaust his two grounds of ineffective assistance of trial counsel. Accordingly, Giovo fails to establish cause and prejudice to overcome the procedural default of either ground two or ground four.

Absent a showing of cause and prejudice, an applicant may obtain federal habeas review of a procedurally defaulted claim only if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Murray v. Carrier*, 477 U.S. 478, 495 96 (1986). A fundamental miscarriage of justice occurs if a constitutional violation has probably resulted in the conviction of someone who is "actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). To meet the "fundamental miscarriage of justice" exception, Giovo must show constitutional error coupled with "new reliable evidence — whether . . . exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324.

Giovo cannot meet the "fundamental miscarriage of justice" exception because he presents no "new reliable evidence" that he is actually innocent. *Schlup*,

513 U.S. at 327. Because Giovo satisfies neither exception to procedural default, both ground two and ground four are procedurally barred from federal review.

**Ground Five**

Giovo contends that the cumulative effect of trial counsel's alleged errors deprived him of his constitutional right to the effective assistance of counsel. "Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984), *cert. denied*, 469 U.S. 1158 (1985). *See also Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [the applicant] received a fair trial as is [his] due under our Constitution."). Because each of the grounds in Giovo's federal application lacks merit, no cumulative prejudice results. *See Spears v. Mullin*, 343 F.3d 1215, 1251 (10th Cir. 2003) ("Because the sum of various zeroes remains zero, the claimed prejudicial effect of [counsel's] cumulative errors does not warrant habeas relief."); *Lorraine v. Coyle*, 291 F.3d 416, 447 (6th Cir.) ("The Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief."), *amended on other grounds*, 307 F.3d 459 (6th Cir. 2002), *cert. denied*, 538 U.S. 947 (2003).

Accordingly, Giovo's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Giovo and close this case.

**DENIAL OF BOTH**
**A CERTIFICATE OF APPEALABILITY**
**<u>AND LEAVE TO APPEAL IN FORMA PAUPERIS</u>**

Giovo is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a COA, Giovo must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001). Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Giovo is entitled to neither a COA nor leave to appeal *in forma pauperis.*

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Giovo must obtain permission from the circuit court to appeal *in forma pauperis.*

ORDERED in Tampa, Florida, on February 11, 2019.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

- 25 -